```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,


        -against-


TONY CLANTON, et al.,

                    Defendants,        MEMORANDUM AND ORDER
        -and-                          23-CR-328 (KAM)

MARY CLANTON,
SHAHIDAH CLANTON,
MELVA JAMES,
JEAN MARTELLY, and
JAMILLAH RIVERA,

                    Sureties.
-----------------------------------X
```

**MATSUMOTO, United States District Judge:**

On April 3, 2024, pursuant to Fed. R. Crim. P. 46(f)(1), the March 27, 2024 declaration of AUSA Andrew Roddin, Esq. (ECF No. 117-1), and the March 25, 2024 report of Pretrial Services (ECF No. 110), this Court declared and ordered that Defendant Tony Clanton's bail was forfeited by virtue of Tony Clanton's violation of several conditions of his bond. *See* (Apr. 3, 2024 Dkt. Entry). Specifically, the Court found that Tony Clanton violated his bond by (1) failing to report to Pretrial Services as directed in violation of condition 7(a), (2) travelling outside the City of New York in violation of condition 7(d), and

1

(3) failing to submit to location monitoring and home incarceration in violation of condition 7(i)(iii). (*Id.*)

On April 3, 2024, the Court also ordered each of Tony Clanton's sureties to show cause by or before April 17, 2024 why default judgment should not be entered upon the government's motion. On April 3, 2024, the Clerk of Court served a copy of the Court's April 3, 2024 Order, as well as the government's motion for forfeiture, including the notice of motion (ECF No. 117), the March 27, 2024 declaration of AUSA Andrew Roddin, Esq. (ECF No. 117-1), the August 17, 2023 Order Setting Conditions of Release and Appearance Bond (ECF No. 117-2), and the government's proposed Order directing entry of default judgment (ECF No. 117-4) on Defendant Tony Clanton, as well as each of the five sureties, Mary Clanton, Shahidah Clanton, Melva James, Jean Martelly, and Jamillah Rivera.

The Court has reviewed the submissions of sureties Shahidah Clanton, Mary Clanton, Jean Martelly, and Melva James (the "Represented Sureties")[1], as well as the timely submission of surety Jamillah Riviera (the "Pro Se Surety"). (ECF Nos. 120, 126.) For the reasons set forth below, the Court finds that the

---

[1] Tony Clanton's counsel of record is Federal Defender Karume James, Esq., who has not objected to the government's motion for forfeiture of Tony Clanton's one-million-dollar ($1,000,000) bond and the government's proposed order directing entry of default judgment. To the extent counsel to the Represented Sureties, Rostislav "Russ" Kofman, Esq., also may seek to represent Tony Clanton in opposing the government's motion and proposed order, the Court continues to recognize Mr. James as Tony Clanton's counsel of record.

sureties have not satisfied either of two circumstances under which bail forfeiture may be set aside pursuant to Fed. R. Crim. P. 46(f)(2).

Accordingly, the Court respectfully directs the Clerk of Court to enter default judgment in the amount of one-million-dollars ($1,000,000) against Tony Clanton and each of the five sureties, jointly and severally, in accordance with Fed R. Crim. P. 46(f)(3).

## LEGAL STANDARD

Pursuant to Fed. R. Crim. P. 46(f)(2), the Court may set aside a bail forfeiture only in two circumstances. First, if any surety "surrenders into custody the person released on the surety's appearance bond," the Court may set aside the bail forfeiture. Fed. R. Crim. P. 46(f)(2)(A). Although Shahidah Clanton and Mary Clanton have both notified the government of Tony Clanton's location in the past, no surety has surrendered Tony Clanton into custody or otherwise assisted the government in securing Tony Clanton's custody in connection with the bond violations identified in the government's instant motion. As of the date of this Memorandum and Order, Tony Clanton is still in violation of his bond conditions. Accordingly, the Court will not set aside the forfeiture pursuant to Fed. R. Crim. P. 46(f)(2)(A).

The second circumstance under which the Court may set aside the bail forfeiture is if "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2)(B). In evaluating whether justice does not require bail forfeiture, the Court considers "whether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; any explanation or mitigating factors presented by the defendant; whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family." *United States v. Gambino*, 17 F.3d 572, 574 (2d Cir. 1994). "A court must also consider 'the deterrence value of total forfeiture.'" *United States v. Rufai*, No. 18-CR-201 (DLC), 2022 WL 2751857, at *1 (S.D.N.Y. July 13, 2022) (quoting *Gambino*, 17 F.3d at 575.) "The burden of establishing grounds for remission is on the party challenging the forfeiture." *Gambino*, 17 F.3d at 574.

## DISCUSSION

### I.   Willful Breach

*First*, the Represented Sureties' argument that Tony Clanton's bond violations were not willful is not supported by any evidence. Whatever the reason for Tony Clanton's alleged visit to Staten Island University Hospital on March 24, 2024, he was subsequently discharged on March 25, 2024, according to Tony

Clanton's mother and surety, Mary Clanton (ECF Nos. 126 at 4; 126-1 ¶ 5).[2]  Moreover, Tony Clanton neither contacted Pretrial Services following his discharge from the hospital, nor has he responded to several attempts by Pretrial Services to contact him and ascertain his whereabouts.

On March 25, 2024 at 3:28 am, Pretrial Services received an alert that Tony Clanton's GPS bracelet was tampered with and, at 7:58 am, Pretrial Services received a notification that Tony Clanton had left his residence.  (ECF No. 110 at 1.)  Thus, the first tampering alerts indicate that, notwithstanding Tony Clanton's alleged hospital visit on March 24, 2024, Tony Clanton again left his residence on March 25, 2024 at approximately 7:58 am.  (*Id.*)  At 8:12 am on March 25, 2024, Tony Clanton's GPS bracelet emitted a series of alerts indicating further tampering and alerted Pretrial Services that, as of 8:13 am, Tony Clanton was in Perth Amboy, New Jersey.  (*Id.*)  Tony Clanton's Pretrial Services officer had not granted permission to Mr. Clanton on March 25, 2024 to leave his residence and travel outside of the City of New York to New Jersey.[3]  In fact, Pretrial Services left

---

[2] Mary Clanton represented in an April 19, 2024 declaration, under penalty of perjury, that she "called the hospital on March 25, [2024] and [that the] staff there confirmed that [Tony Clanton] had been there the day before, but was now discharged."  (ECF No. 126-2 ¶ 5.)
[3] Pursuant to condition 7(d) of Tony Clanton's bond, Tony Clanton may "not leave . . . New York City . . . except for travel to and from court."  (ECF No. 21 at 1.)  Pursuant to condition 7(i)(iii) of Tony Clanton's bond, Tony Clanton is subject to "24-hour lock-down at [his] residence, except for medical necessities, court appearances, and any other activities ordered by the Court."  (*Id.*)

a message for Tony Clanton on the morning of March 25, 2024,
when his GPS bracelet first alerted Pretrial Services of
tampering, instructing Tony Clanton to report to the Pretrial
Services offices the next business day for inspection of the GPS
bracelet.  (*Id*.)  The government also represented that by March
27, 2024, Tony Clanton's phone was no longer in use and that he
failed to report to Pretrial Services after he was directed to
do so on March 25, 2024.  (ECF No. 117-1 ¶ 3.)

In light of this evidence, the sureties have made no
representations or provided any evidence or argument that
suggests Tony Clanton's absence for nearly one month can
reasonably be attributed to a medical emergency that neither the
government nor any surety has been able to confirm or support
with evidence.  Accordingly, the sureties have not met their
burden of establishing grounds for setting aside the bond
forfeiture based on the argument that Defendant Clanton's
violations were not willful.  The Court finds that Tony
Clanton's violations of his bond conditions are and were
willful.

## II.  Cost, Inconvenience, and Prejudice

*Second*, the cost, inconvenience, and prejudice suffered by
the government as a result of Tony Clanton's bond violations are
substantial.  After over a year of investigation, including,
*inter alia*, several search warrants, voluminous document review,

6

witness interviews, and plea negotiations, the government repeatedly represented that it was prepared to proceed to trial on April 8, 2024.  The Court ultimately found that justice would be served by an adjournment of the trial date, but it is clear that Tony Clanton's failure to comply with his bond conditions has resulted in significant costs to the government, including past resources expended to investigate and prepare for trial, and the resources being expended at present to locate Tony Clanton and bring him to justice.  The government has been and will continue to be prejudiced by Tony Clanton's bond violations.

### III. Mitigating Factors

*Third*, no explanation or mitigating factors have been proffered by Tony Clanton as he remains in violation of his bond conditions.  Consequently, the Court is without means to consider the third factor, which should not weigh in Tony Clanton's favor.

### IV.  Apprehension Assistance

*Fourth*, no surety has assisted in ultimately apprehending Tony Clanton, because the record reflects that Tony Clanton has not yet been apprehended.  Moreover, the government has made no representations that any of the sureties have assisted with apprehending Tony Clanton in connection with the bond violations that are the subject of this bail forfeiture.  The Represented

7

Sureties point to past actions in speaking with law enforcement, including Mary Clanton's statement that "Tony [Clanton was] at the ER" on March 24, 2024 (ECF No. 126-2 ¶ 6) and Shahidah Clanton's statement that, at an unidentified point in time, "Tony [Clanton] . . . attempted to purchase a vehicle" (ECF No. 126-1 ¶ 5), but on the current record, the Court finds that the quality and effectiveness of the sureties' statements does not warrant a finding that any surety assisted in apprehending Tony Clanton or determining Tony Clanton's whereabouts. *See United States v. Pevzner*, No. 08-cv-706 (RJD), 2010 WL 1993865, at *4 (E.D.N.Y. May 18, 2010) (explaining that, although the court "appreciate[s] any efforts that the [sureties] may have made, [] while the defendant is still at large, it makes little sense to weigh the [sureties'] assistance heavily" because it has proved, thus far, to be of "minor importance.") (quoting *United States v. Gallego*, No. 02-cv-5987, 2003 WL 1193536, at *2 (E.D.N.Y. Jan. 29, 2003)); *see also United States v. Stathakis*, No. 04-cv-790 (CBA)(CLP), 2007 WL 3124703, at *7 (E.D.N.Y. Oct. 24, 2007) (noting that where "the surety's assistance in apprehending the defendant was not necessary," the bond forfeiture was warranted.)

V.    **The Sureties' Relationships**

*Fifth*, each of the five sureties who have opposed the government's motion are close community members, friends, or

8

family members of Tony Clanton, which is the only factor that
could weigh in favor of setting aside the bail forfeiture. *See
Rufai*, 2022 WL 2751857, at \*1 (listing the fact that "the
Sureties are members of the defendant's family and community" as
one of "few factors favor[ing] remission"). The Court has great
sympathy for each of the five sureties who will bear the
financial consequences of Tony Clanton's willful violations of
several bond conditions. The Court further recognizes that in
securing Tony Clanton's bail, each surety may have been driven
by their affection, friendship, or close relationship with Tony
Clanton and that a one-million-dollar ($1,000,000) judgment will
likely be a significant financial burden. Nevertheless, based
on a review of the August 17, 2023 bail hearing transcript, the
Court is confident that each of the five sureties was carefully
advised by Magistrate Judge Bulsara of the consequences of Tony
Clanton's failure to comply with the bail conditions, and that
the sureties fully comprehended the risks associated with
signing Tony Clanton's bail bond. *See United States v.
Carvajal*, 674 F. Supp. 973, 974 (E.D.N.Y. 1987) (explaining that
even though the surety "[was] not a professional surety" and
instead, "[was] a friend . . . of the defendant," the record . .
"[did] not reasonably support" the surety's argument that he
"was unaware of his personal exposure.") Moreover, "financial
hardship alone does not require remission of a surety's payment

obligation." *United States v. Agueci*, 379 F.2d 277, 278 (2d Cir. 1967) (per curiam).

On August 17, 2023, sureties Shahidah Clanton, Melva James, and Jamillah Rivera appeared in Court at Tony Clanton's bail hearing, and sureties Mary Clanton and Jean Martelli appeared by telephone. After each surety took on oath, they explained to Magistrate Judge Bulsara how they knew Tony Clanton, described their income and sources of income, and stated that they understood after Magistrate Judge Bulsara specifically advised them that "if Mr. Clanton violates a condition, or if he doesn't come to court, the government could seek to collect . . . up to a million dollars." (Tr. at 14:6-9.) Magistrate Judge Bulsara further noted that "even if you don't have that money now, the government could get a judgment against you . . . [and that] if you ever applied for a loan, [] tried to get a mortgage, [] tried to get a car loan, [or] do anything where your credit matters, you'd have to say that you had a judgment against you . . . so it can affect you even if you don't have money in [your] bank account." (Tr. at 14:10-16.) Each of the sureties explicitly confirmed on the record that they understood Magistrate Judge Bulsara's explanation of their obligations and the risks associated with signing the bond if Tony Clanton violated any condition of his bond or failed to appear before this Court. (Tr. at 14:17-20) (Q. "Do you understand what I've

10

just explained?" A: "Ms. S. Clanton: Yes", A: "Ms. James: Yes."
A: "Ms. Rivera: Yes."); (Tr. at 16:15-21) (Q: "if he violates a
condition that I explained . . .or doesn't come to court, then
the consequences to you mean the government could seek to
collect from you up to a million dollars. Do you understand
that?" A: "Ms. M. Clanton: Yes, I do."); (Tr. at 20:1-8) (Q:
"And do you understand that what that means is that if he were
to violate a condition that we've imposed . . . or if he doesn't
come to court . . . the government could seek to collect from
you up to a million dollars?" A: "Ms. Martelli: "Yes, Your
Honor.")[4] Each surety further confirmed that notwithstanding the
risks of serious financial consequences if Tony Clanton violated
any condition of his bond or failed to appear before this Court,
each was willing to sign the bond and secure Tony Clanton's
bail. (Tr. at 15:2-9) (Q: "In light of the fact that if he
violates the conditions that I just explained, there will be
serious consequences to each of you, financial consequences, are

---

[4] Tony Clanton also confirmed on the record that he understood the possible
consequences of violating a condition of his bond. *See* (Tr. at 8:3-7) (Q:
"if you don't come to court or you violate a condition, I or another judge
would issue an arrest warrant . . . you also are signing . . . and you have
five family members and loved ones and friends signing onto a bond in the
amount of $1 million. If you violate a condition or don't come to court,
you're putting all of those people in serious financial jeopardy . . . Do you
understand that? sir?" A: "The Defendant: Yes, Your Honor.") Moreover, Tony
Clanton's bond explicitly warns that "[if] the defendant does not comply with
the conditions set forth in this . . . Bond, this [] bond may be forfeited
and the Court may immediately order the amount of the bond and any collateral
to be surrendered to the United States" and that upon the "request of the
United States, the Court may order a judgment of forfeiture against the
defendant and each surety for the entire amount of the bond, including
interest and costs." (ECF No. 21 at 2.)

you still willing to sign onto the bond in support of his release?" A: "Ms. S. Clanton: Yes", A: "Ms. James: Yes." A: "Ms. Rivera: Yes."); (Tr. at 17:1-5) (Q: "And in light of everything I've explained, including that if he violates a condition, there will be consequences to you, are still willing to sign onto the bond in support of his release?" A: "Ms. M. Clanton: Yes, I am."); (Tr. at 20:13-16) (Q: "And in light of everything I've explained are you still willing to sign the bond in support of [Tony Clanton's] release?" A: "Ms. Martelli: Yes, I am.")  Thus, the Court finds that Defendant Tony Clanton and each of the five sureties knowingly and voluntarily signed Tony Clanton's bond to secure Tony Clanton's bail, and each surety understood the risk of doing so.

## VI.  Deterrence

*Finally*, the deterrent value served by total forfeiture is especially important in cases such as the instant one, involving serious charges of a Hobbs Act conspiracy and several attempted and actual Hobbs Act robberies.  The sureties were specifically advised by Magistrate Judge Bulsara of the serious nature of the charged offenses.  (Tr. at 14:23-24) (Defendant Clanton "is in court because he is being charged with some serious federal crimes."); (Tr. at 20:9-11) ("the reason we're here in court is because the government has charged [Defendant Clanton] with serious federal crimes.")  Moreover, where "the defendant[] []

12

flee[s], and remain[s] [a] fugitive[] from justice," a decision to set aside the bail forfeiture "at this time, would thwart the purpose of bail bonds, which is to secure the defendant's presence." *Carvajal*, 674 F. Supp at 975 (internal quotation marks and citation omitted).

## CONCLUSION

For the reasons set forth above, the Court finds that the preponderance of the six factors and the interests of justice weigh in favor of entering a judgment of default on the forfeited one-million-dollar ($1,000,000) bond against Defendant Tony Clanton, and sureties, Mary Clanton, Shahidah Clanton, Jean Martelly, Melva James, and Jamillah Rivera, jointly and severally.  The Court has not been presented with evidence that Tony Clanton's breach of the conditions of his bond was not willful.  Nor has the Court received any explanation regarding mitigating factors to excuse Tony Clanton's actions.  Tony Clanton's violations have caused and continue to cause significant prejudice and costs to the government.  Although the Represented Sureties and Pro Se Surety are members of Tony Clanton's family and community, as opposed to professional sureties, each surety confirmed on the record that they understood the responsibilities and risks they were undertaking and proceeded to sign the bond knowingly, willingly, and

voluntarily.  Based on the current record, the sureties will not be relieved of their obligations on the forfeited bond.

The Clerk of Court is respectfully requested to enter default judgment against the Represented Sureties, the Pro Se Surety, and Defendant Tony Clanton in the amount of one-million-dollars ($1,000,000) jointly and severally, on the forfeited bond.  Counsel for the Represented Sureties is respectfully requested to serve this Memorandum and Order and the Judgment on his clients and note service on the docket by April 24, 2024.  The government is respectfully requested to serve this Memorandum and Order and the Judgment on the Pro Se Surety and note service on the docket by April 24, 2024.

**SO ORDERED**

Dated:    April 22, 2024
          Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

14